75561. WALLS, INC. v. ATLANTIC REALTY COMPANY et al.
(367 SE2d 278)

CARLEY, Judge.

Appellee-third-party plaintiff Atlantic Realty Company (Atlantic) hired Beers Construction Company (Beers) as the general contractor for the renovation of a building that it owned. The general contract between Atlantic and Beers provided that the latter would indemnify and hold the former harmless as to all claims arising out of or in connection with the performance of the contract. The general contract also specified that, from each subcontractor, Beers would procure, as additional protection for Atlantic, an independent indemnification and hold harmless agreement, whereby the subcontractor would agree to indemnify Atlantic. In addition to this provision requiring Beers to secure an independent indemnity agreement from each subcontractor, the general contract also provided that "[a]ll work performed for [Beers] by a Subcontractor shall be pursuant to an appropriate written agreement between [Beers] and the Subcontractor which contains provisions . . . indemnifying [Atlantic] in accordance with [the indemnity provisions] hereof."

Beers subcontracted with appellant-third-party defendant Walls, Inc. (Walls) for the installation of drywall in the renovated building. Allen Jones, an employee of Walls, was killed in a fall during the renovation of the building. Jones' widow brought suit against Atlantic and another defendant, alleging that their negligence was the proximate cause of her husband's death. Atlantic then filed this third-party action against Walls. The third-party complaint alleged that

Walls had agreed to indemnify and to hold Atlantic harmless as to claims arising out of Walls' performance of the drywall work in the renovated building. Walls answered the third-party complaint, denying the existence of any agreement on its part to indemnify Atlantic. Cross-motions for summary judgment were filed. The trial court denied Walls' motion, but granted summary judgment in favor of Atlantic. Walls appeals from the trial court's order granting summary judgment in favor of Atlantic and denying its motion for summary judgment.

1. The facts are undisputed and the only issue involved is one of contractual interpretation. Beers never procured an agreement from Walls, independent of the subcontract, whereby Walls made an express and direct promise as to the indemnification of Atlantic. The only express promise as to the direct indemnification of Atlantic is that which was made by Beers in the general contract. Accordingly, with regard to the procurement from Walls of an indemnification agreement independent of the subcontract, Beers may have breached a contractual obligation owed to Atlantic. However, the subcontract that was entered into between Beers and Walls does contain Walls' express agreement to "perform all work" in the restoration of the building "in accordance with" the general contract between Beers and Atlantic, which general contract "hereby become[s] a part" of Walls' subcontract with Beers. Atlantic urged and the trial court found that this provision of the subcontract was sufficient to incorporate all of the provisions of the general contract into the subcontract and that the legal effect of this incorporation by reference was to obligate Walls to indemnify Atlantic directly, just as Beers had agreed to do in its general contract with Atlantic.

"As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning. [Cits.]" *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717 (2) (234 SE2d 363) (1977). See also *Hartline-Thomas v. Arthur Pew Constr. Co., Inc.*, 151 Ga. App. 598, 599 (260 SE2d 744) (1979). Here, the clear intent was that the general contract, in its entirety, be incorporated into and become a part of the subcontract which Walls agreed to enter. Accordingly, incorporated by reference into that subcontract was the provision of the general contract which had specified that a *subcontract* was itself to contain a provision whereby Atlantic would be indemnified by the subcontractor. Accordingly, the subcontract *itself* contained, as one of its provisions, Walls' agreement that "[a]ll work" that it was to perform on the renovated building "shall be pursuant to an appropriate written agreement . . . which contains provisions . . . indemnifying [Atlantic] in accordance with [the indemnity provisions of the general contract,

which indemnity provisions are themselves incorporated by reference into the subcontract]." Thus, the *subcontract itself* evinces both Walls' agreement to indemnify Atlantic and the terms of that indemnification agreement. Undoubtedly, an intent as to the imposition upon and the assumption by Walls, as the subcontractor, of an obligation to indemnify Atlantic, as the owner, could have been more clearly evinced by the assertion of an express provision to that effect into the subcontract. That, from the perspective of hindsight, however, it is possible to conclude that a contractual intent could have been more clearly expressed is not a basis for holding that the manifestation of that intent cannot be accomplished through resort to incorporation by reference. Accordingly, the trial court correctly held that, through incorporation by reference, the parties to the subcontract accomplished their intended purpose of including in their subcontract a provision whereby Walls agreed to the indemnification of Atlantic.

However, incorporation by reference would show only that the subcontract *contained* such an indemnity provision. It would not necessarily show the legal entitlement of Atlantic, who was not an immediate party to the subcontract, to secure the *enforcement* of that provision. "In the present case, the owner was not a named party to the contract between the subcontractor and general contractor, did not sign the contract, nor become obligated in any way thereunder." *Robertson v. Laughlin Insulation Co.*, 134 Ga. App. 509, 511 (215 SE2d 274) (1975). As a general rule, "one not in privity of contract with another cannot maintain an action against him for breach of the contract. . . ." *R. F. Burton Co. v. Southern Marine Assoc.*, 130 Ga. App. 111, 112 (1) (202 SE2d 544) (1973). OCGA § 9-2-20 (b) does provide, however, that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." OCGA § 9-2-20 (b). Accordingly, although the subcontract does contain a provision whereby Walls agreed to indemnify Atlantic, Atlantic would be entitled to enforce that provision against Walls if, but only if, Atlantic is a third-party beneficiary thereof. "Although as a general rule an action on a contract is brought by a party to it, the beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract. [Cit.]" *Somers v. Avant*, 244 Ga. 460, 463 (261 SE2d 334) (1979).

"In order for a third party to have standing to enforce a contract under [OCGA § 9-2-20 (b)] it must clearly appear from the contract that it was *intended* for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. [Cits.]" (Emphasis supplied.) *Backus v. Chilivis*, 236 Ga. 500, 502 (II) (224 SE2d 370) (1976). Accordingly, the mere fact that Atlantic might ben-

efit from Walls' performance of any particular provision of the sub-contract will not suffice to entitle Atlantic to claim the right to secure enforcement of that provision. See generally *McWhirter Material Handling Co. v. Ga. Paper Stock Co.*, 118 Ga. App. 582 (164 SE2d 852) (1968); *Stein Steel & Supply Co. v. Goode Constr. Co.*, 83 Ga. App. 821 (65 SE2d 183) (1951). "There must be a promise by the promisor to the promisee to render some performance to a third person *and* it must appear that both the promisor and the promisee intended that the third person should be the beneficiary. [Cits.]" (Emphasis supplied.) *Southeast Grading v. City of Atlanta*, 172 Ga. App. 798, 800 (1) (324 SE2d 776) (1984). See also *Donalson v. Coca-Cola Co.*, 164 Ga. App. 712, 713 (2) (298 SE2d 25) (1982). As discussed, the subcontract, through incorporation by reference, does contain Walls' promise to indemnify Atlantic. To determine whether Walls and Beers further intended that Atlantic would be a third-party beneficiary of that promise requires, however, a consideration of the entirety of the subcontract. " 'The rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto. To recover the beneficiary must bring himself within its terms and construction of the contract is involved. . . .' [Cit.]" *Deal v. Chem. Constr. Co.*, 99 Ga. Ap. 413, 417 (1) (108 SE2d 746) (1959).

This subcontract, when construed in its entirety, clearly indicates that *neither* party thereto intended that Atlantic be the third-party beneficiary of any promise made therein by Walls to Beers, either as to the indemnification of Atlantic or as to any other promise contained therein. Paragraph 30 of the subcontract specifically provides that Beers and Walls "agree . . . [t]his subcontract is *solely* for the benefit of the signatories hereto." (Emphasis supplied.) Atlantic was not a signatory to the subcontract. Only Beers and Atlantic were. It follows that, under the express terms of the subcontract, Atlantic *cannot* be considered a third-party beneficiary of any indemnity provision therein, even though such an indemnification provision exists and regardless of the terms thereof. The intent of the parties to this particular subcontract was to the effect that *no* others benefit from it and this intent could scarcely have been more clearly expressed. "It must appear that both parties to the contract intended that the third person should be the beneficiary. [Cits.] There is nothing in the contract between [Walls] and [Beers] to indicate that it was intended for [Atlantic's] benefit as a third party beneficiary. Thus, [Atlantic] had no standing to bring a direct action on the contract as a third party beneficiary." *Donalson v. Coca-Cola Co.*, supra at 713-714 (2). It follows that the trial court erred in granting summary judgment in favor of Atlantic and in denying Walls' motion.

2. Remaining enumerations of error are moot by virtue of our holding in Division 1 of this opinion.

*Judgments reversed. Banke, P. J., and Benham, J., concur.*

DECIDED MARCH 16, 1988.

*Michael S. Huff, Reagan W. Dean,* for appellant.

*Guy J. Notte, Harris C. Bostic, James B. Hiers, Meade Burns, Donald F. Daugherty, John A. Christy,* for appellees.